UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

NATHAN PRYCE,

      Plaintiff,

v.

TATA CONSULTANCY SERVICES/TATA CONSULTANCY SERVICES LIMITED AND JOHN/JANE DOES 1-5,

      Defendants.

No. 1:21-cv-00528

**OPINION**

---

**APPEARANCES**:

Graham Faville Baird
LAW OFFICES OF ERIC A. SHORE, P.C.
1500 J.F.K. Boulevard
Suite 1240
Philadelphia, PA 19102

Valerie Catherine Shore
LAW OFFICES OF ERIC A. SHORE, P.C.
20 Brace Road
Suite 325
Cherry Hill, NJ 08034

    *On behalf of Plaintiff.*

Sean J. Kirby
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
Suite 2400
New York, NY 10112

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Defendant Tata Consultancy Services Limited's ("Defendant" or "TCS") Motion for Summary Judgment, (ECF No. 25). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

I.    BACKGROUND

Nathan Pryce ("Plaintiff"), an African American male, was an at-will program manager for TCS, an international technology company headquartered in Mumbai, India, for seven years. (Def. SOMF, ECF No. 25-2 ¶¶ 1, 7, 10–11; Pla. SOMF, ECF No. 27-2 ¶¶ 1, 7, 14). As program manager, Plaintiff was assigned to work on various projects for TCS clients. (Def. SOMF, ECF No. 25-2 ¶ 8; Pla. SOMF, ECF No. 27-2 ¶ 8). After Plaintiff completed a project with a particular client, TCS's Resource Management Group ("RMG") would search for a new project for him to be assigned. (Def. SOMF, ECF No. 25-2 ¶¶ 18, 20; Pla. SOMF, ECF No. 27-2 ¶¶ 18, 20). If Plaintiff was interested in an available project, the individual TCS client overseeing the project would interview him and determine whether to retain him on the project. (Def. SOMF, ECF No. 25-2 ¶ 21; Pla. SOMF, ECF No. 27-2 ¶ 21).

In January 2020, Defendant granted Plaintiff's accommodation request to work remotely because his disability made it difficult and painful for him to travel. (Def. SOMF, ECF No. 25-2 ¶¶ 57, 59, 60; Pla. SOMF, ECF No. 27-2 ¶¶ 57, 59, 60). Plaintiff worked remotely through March 2020, when his assignment on a Bank of America project ended. (Def. SOMF, ECF No. 25-2 ¶¶ 57, 59, 60; Pla. SOMF, ECF No. 27-2 ¶¶ 57, 59, 60). After that project ended, the RMG attempted to find a new project for Plaintiff. (Def. SOMF, ECF No. 25-2 ¶¶ 33, 35; Pla. SOMF, ECF No. 27-2 ¶¶ 33, 35). After Plaintiff was unallocated to any project for three months,

Defendant terminated Plaintiff on July 8, 2020. (Def. SOMF, ECF No. 25-2 ¶ 11; Pla. SOMF, ECF No. 27-2 ¶ 14).

Plaintiff alleges TCS discriminated against him on the basis of race, disability, and perceived disability in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-1, et seq. (Compl., ECF. No. 1-1). He also alleges that TCS retaliated against him for complaining about the alleged discrimination, in violation of the NJLAD. (Compl., ECF. No. 1-1).

## II.   PROCEDURAL HISTORY

On December 2, 2020, Plaintiff commenced this action in the Superior Court of New Jersey, Burlington County. (Compl., ECF No. 1-1). On January 11, 2021, Defendant removed this matter to this Court under 28 U.S.C. §§1331, 1332, 1367(a), 1441, and 1446. (Notice of Removal, ECF No. 1). On April 26, 2022, Defendant filed the present Motion. Plaintiff filed a Response (ECF No. 27), to which Defendant replied, (ECF No. 30).

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable

inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Defendant has moved for summary judgment on all counts of Plaintiff's Complaint, (ECF No. 1-1), under Federal Rule of Civil Procedure 56(a), arguing that Plaintiff's claims are without merit and should be dismissed as a matter of law. (ECF No. 25-1). After reviewing the record, the Court concludes that summary judgment should be granted as to Plaintiff's Complaint in its entirety.

### A. Defendant is Entitled to Summary Judgment on Plaintiff's Race Discrimination Claim

In Count One of his Complaint, Plaintiff alleges race discrimination in violation of the NJLAD. (ECF No. 1-1, ¶¶ 34–41). The NJLAD provides that it is an unlawful employment practice for an employer "because of the race . . . of any individual . . . to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment[.]" N.J.S.A. § 10:5-12(a). "Discrimination claims brought under . . . [the] NJLAD . . . are subject to the *McDonnell Douglas* burden shifting framework." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first establish a prima facie case of discrimination. *Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd.*, 704 F. App'x 164, 167 (3d Cir. 2017). To do so, Plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action despite his qualifications, and (4) circumstances exist that raise an inference of discriminatory action. *Id.* If Plaintiff can establish a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Johnson v. Delaware Cnty. Juv. Det. Ctr.*, 545 F. App'x 135, 138 (3d Cir. 2013) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–05). The burden then shifts back to Plaintiff who must show through direct or circumstantial evidence that the reason given by Defendant is merely pretext and the real reason for the adverse employment action was Plaintiff's protected status. *Id.*

NJLAD claims are subject to a two-year statute of limitations. *Montells v. Haynes*, 627 A.2d 654, 658–60 (N.J. 1993). "For causes of action arising under anti-discrimination laws,

however, a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations." *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (quoting *Bolinger v. Bell Atlantic,* 749 A.2d 857, 860 (N.J. Super. App. Div. 2000)). However, the Supreme Court has differentiated between discrete acts and continuous violations, noting that some discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). "Each [such] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* Additionally, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Roa*, 985 A.2d at 1231–32 (quoting *National R.R. Passenger Corp.*, 536 U.S. at 113). Thus, for limitations purposes, a "discrete retaliatory or discriminatory act occur[s] on the day that it 'happen[s].'" *Id.* (quoting *National R.R. Passenger Corp.*, 536 U.S. at 110). Whereas a continuing violation is "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* (quoting *National R.R. Passenger Corp.*, 536 U.S. at 117). A continuing violation cause of action thus accrues on the date on which the last act occurred. *Id*. (citing *National R.R. Passenger Corp.*, 536 U.S. at 117).

6

Here, Plaintiff's Complaint was filed on December 2, 2020. As Defendant accurately notes, there are three allegations that are time barred as each was a *discrete* adverse employment decision.[1] First, Plaintiff's allegation that he was not promoted in 2015 and 2016 is time barred as these were discrete acts. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 221:12–222:23, 228:13–232:16). Second, Plaintiff's allegation that he was excluded from a meeting, while he was assigned to the Pentagon Federal Credit Union project is time barred as that was a discrete act and the project ended in February 2018. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 44:12–50:10, 236:9–15). Finally, Plaintiff's allegation that he was not permitted to hire his own employees on two projects is also time barred because that was a discrete act and the Vanguard Group and Pentagon Federal Credit Union projects, ended in July 2017 and February 2018, respectively. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 151:9–154:15, 205:17–22, 236:10–15).

Even considering the remaining allegations of race discrimination that survive and viewing them in the light most favorable to Plaintiff, the evidence upon which Plaintiff relies does not give rise to an inference of discrimination. Since the parties do not dispute whether Plaintiff can establish the first three prongs of his prima facie claim of race discrimination, the

---

[1] Plaintiff fails to address this argument in his opposition to Defendant's Motion. As such, the Court assumes Plaintiff has abandoned claims related to these discrete acts. To be sure, "when a party fails 'to offer any argument or evidence . . . in opposition to [a] defendant['s] motion for summary judgment, such claims may be deemed to have been abandoned.'" *Desyatnik v. Atlantic Casting & Engineering Corp.,* No. 03-5441, 2006 WL 120163, at *1 (D.N.J. Jan. 17, 2006) (quoting *Curtis v. Treloar,* No. 96-1239, 1998 WL 1110448, at *9 (D.N.J. Aug. 27, 1998)); *see also 7 Eleven, Inc. v. Sodhi*, 706 F. App'x 777, 780 n.16 (3d Cir. 2017). Nevertheless, the Court addresses will address the argument on the merits.

Court will limit its analysis to the fourth prong.[2] In opposition to Defendant's Motion, Plaintiff points to various allegations, which he argues give rise to an inference of race discrimination. First, Plaintiff alleges that Defendant preferred to hire Indian employees. (Pla. Br., ECF No. 27-1 at 7). Second, Plaintiff alleges that he was not afforded the same resources and opportunities that were afforded to his non-Black colleagues. (Pla. Br., ECF No. 27-1 at 7). Plaintiff also alleges that, shortly before Defendant terminated him, a member of Defendant's management team allegedly made a comment that "these people don't want to work," which Plaintiff believed was a racially motivated comment. (Pla. Br., ECF No. 27-1 at 7).

Even considering TCS's promotional decisions in 2015 and 2016, which as previously noted are time barred, the evidence Plaintiff presents does not give rise to an inference of discrimination. Indeed, Plaintiff himself testified that TCS preferred to hire individuals who were already employed by TCS in India, and who already had work visas for the United States, instead of hiring new employees. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 153:2–21). Plaintiff also testified that on three separate occasions TCS allowed him to recruit locally when the project had time constraints and TCS could not wait for additional employees to arrive from India. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 153:22–154:15). Plaintiff's own testimony thus undermines any inference of race discrimination.

---

[2] As to the third prong, Plaintiff's termination undoubtedly qualifies as an adverse employment action. It is, however, unclear whether Plaintiff could satisfy the third prong of the prima facie case as to each of the incidents he alleges as a factual basis for his claim because many of his factual allegations are not adverse employment *actions*. While such incidents might collectively be relied upon to assert a claim of a hostile work environment, no such claim was pled in the Complaint and Plaintiff never asserted such a claim in his opposition brief. Again, failure to raise an argument in opposition to summary judgment constitutes waiver of that argument. *See, e.g., 7 Eleven, Inc. v. Sodhi*, 706 F. App'x 777, 780 n.16 (3d Cir. 2017).

Similarly, Plaintiff's allegations that he was not afforded the same opportunities as his non-African American colleagues also does not establish an inference of discrimination. With respect to Plaintiff's claim that he was underpaid, Plaintiff testified that he was comparing himself to individuals at other companies. (Def. Motion for Summary Judgment, ECF No. 25-7, Exh. C 224:8–225:17). Thus, Plaintiff has not provided any comparator evidence with similarly-situated individuals outside of his protected class at TCS. *See Rossi v. New Jersey*, 39 F. App'x 706, 709 (3d Cir. 2002) (affirming summary judgment on NJLAD claim because comparators the plaintiff cited as having higher salaries were not similarly situated to the plaintiff). As to Plaintiff's allegation that TCS offered him junior-level assignments, Plaintiff testified that RMG circulates all available projects to all employees currently in need of an assignment without any consideration of the employee's credentials and the project's needs. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 155:18–159:9). Plaintiff points to no comparator evidence in this regard and his own testimony regarding the assignment process does not support an inference of race discrimination.

Plaintiff's claims regarding the work meetings similarly does not support an inference of race discrimination. First, Plaintiff's allegation that Defendant excluded him from a meeting sometime in early 2018 is, as previously noted, time barred to the extent it is even considered an adverse employment action. But even if it were considered, Plaintiff's own testimony, again, undermines any inference of discrimination. Plaintiff testified Defendant excluded him from the meeting because he had complained about the lack of resources on the project. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 45:2–49:18). Plaintiff's own testimony thus confirms that the exclusion was unrelated to race. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 45:2–49:18).

Further, Plaintiff's allegation that he was discriminated against because, at times, the meetings were conducted in a language other than English does not give rise to an inference of discrimination. Not only did Plaintiff acknowledge in his testimony that twice when asked the meeting participants would resume speaking in English, (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 40:19–41:9), the occasional use of a language not spoken by a plaintiff is insufficient to establish race discrimination. *See Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 307 (D.N.J. 2016) (noting, in summary judgment motion, speaking another language around non-speaker while possibly insensitive is not, alone, evidence of race discrimination); *Austin v. Bloomin' Brands, Inc.*, No. 16-6509, 2017 WL 3726979, at *5–6 (E.D. Pa. Aug. 30, 2017) (finding, in summary judgment motion, insufficient evidence plaintiff's co-workers' behavior was based on race when they, among other things, spoke a different language around him).

Finally, Plaintiff's allegation that during a call with his supervisor, an unknown human resources representative said, "these people, they don't want to work," months before his termination alone is insufficient to infer discrimination. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 62:19–67:7). Indeed, Plaintiff does not identify the individual who allegedly made the comment nor is there any context to suggest that the comment was race-based or to whom "they" referred.

For all these reasons, the Court finds that the Plaintiff cannot make a prima facie case of discrimination based upon race because he fails to meet the fourth prong to set forth evidence that raises an inference of discriminatory action.

Even assuming Plaintiff established a prima facie case of discrimination under the NJLAD, the Court would nevertheless grant summary judgment under the burden-shifting

analysis. With respect to the pretext analysis, a plaintiff can survive summary judgment where a plaintiff points to direct or circumstantial evidence "from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (internal quotations and citations omitted). "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact." *Phillips v. Starbucks Corp.*, No. 19-19432, 2022 WL 3913373, at *8 (D.N.J. Aug. 31, 2022) (publication in the Federal Supplement forthcoming) (quoting *Zelesnick v. Temple Univ. Health Sys., Inc.*, No. 19-5820, 2021 WL 201300, at *8 (E.D. Pa. Jan. 20, 2021)).

      As previously noted, here, Plaintiff's own testimony undermines his pretext argument as he himself articulated the legitimate, non-discriminatory reasons for each allegation of discrimination. Additionally, with respect to the comment made by an unnamed human resources representative, in determining whether a remark is evidence of pretext, courts consider whether the speaker was a decisionmaker, the content of the statement, and whether the remark was related to the decisional process. *Kargbo v. Philadelphia Corp. for Aging*, 16 F. Supp. 3d 512, 523–24, 528 (E.D. Pa. 2014). While "stray remarks alone are insufficient, they can support a finding of pretext when there is additional evidence to disbelieve the employer's proffered reason." *Kargbo*, 16 F. Supp. 3d at 528. Here, even viewing the alleged comment in the light most favorable to Plaintiff, Plaintiff fails to provide sufficient evidence that the statement was even racially motivated, that the speaker was a decisionmaker, and that the remark had anything to do with Plaintiff's termination months later.

In summary, Plaintiff has failed to produce any evidence from which a reasonable jury could disbelieve Defendant's proffered reason for termination: Plaintiff was without assignment for three months. Indeed, Defendant's policy is to begin the termination process if an employee is unallocated for a period time. (Mehndiratta Decl., Def. Motion for Summary Judgment, ECF No. 25-16 at ¶¶12–13). Plaintiff does not dispute that this was the company policy or that the policy was applied disparately. To the contrary, Plaintiff was aware of this policy as he acknowledged that TCS had begun the termination process as to him for this precise reason once before in 2017 after he had been unallocated for a period of time. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 237:19–22). Plaintiff here simply fails to rebut Defendant's nondiscriminatory reason for his termination.

Put simply, Plaintiff has provided no evidence that TCS terminated him because of his race other than offering his "own subjective opinion that he received disparate treatment because of his race." *See Merke v. Lockheed Martin*, 645 F. App'x 120, 124 (3d Cir. 2016) (affirming grant of summary judgment on race discrimination claims because the plaintiff had not "provided any evidence that his race played a role in how he was treated at work or why he was ultimately laid off, other than his own subjective opinion that he received disparate treatment because of his race"). Here, it is undisputed that Plaintiff was unallocated from any assignment for three months prior to his termination and he fails to identify any evidence from which a jury could reject this reason and find pretext for race discrimination. (Def. SOMF, ECF No. 25-1 ¶¶ 11, 13; Pla. SOMF, ECF No. 27-1 ¶ 13).

Therefore, summary judgment is granted as to Count One of Plaintiff's Complaint.

### B. Defendant is Entitled to Summary Judgment on Plaintiff's Disability and Perceived Disability Discrimination Claims

Plaintiff alleges two counts under the NJLAD for disability discrimination and perceived disability discrimination.[3] (Compl., ECF No. 1-1, ¶¶ 42–54). The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such a person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. To assert a claim of disability discrimination for discriminatory discharge under the NJLAD, Plaintiff must establish that (1) he was disabled; (2) he was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) he was terminated; and (4) the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *Guarneri v. Buckeye Pipe Line Servs. Co.*, 205 F. Supp. 3d 606, 614 (D.N.J. 2016) (citing *Joseph v. N.J. Transit Rail Operations, Inc.*, 586 F. App'x 890, 892 (3d Cir. 2014)). Again, the *McDonnell Douglas* burden-shifting framework applies. *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 236 (D.N.J. 2015).

In addition, courts have held that the NJLAD "requires an employer to reasonably accommodate an employee's handicap." *Rich v. State*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018). Indeed, "[d]isability discrimination encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Stewart v. County of Salem*, 274 F. Supp. 3d 254, 259 (D.N.J. 2017)

---

[3] The Court will consider Plaintiff's disability and perceived disability claims together as the factual allegations underlying the claims are the same. Moreover, a "perception of disability discrimination" claim "merely provides an alternative definition for a motivation prohibited by the statute; it does not present a separate cause of action." *Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037, 2018 WL 3814278, at *4 (D.N.J. Aug. 10, 2018) (citing *Rogers v. Campbell Foundry Co.*, 447 A.2d 589, 591 (N.J. Super. App. Div. 1982)).

(citations omitted). "To prevail on a failure to accommodate claim, a plaintiff must first present the *prima facie* elements required in any disability discrimination claim." *Fitzgerald*, 92 F. Supp. 3d at 237. Once a plaintiff has established those elements, he must then "show that his employer failed to participate in the interactive process" by establishing additional elements. *Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x. 831, 849 (3d Cir. 2016) (quoting *Victor v. State*, 4 A.3d 126, 145 (N.J. 2010)). Those elements are that: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.*

As a preliminary matter, Defendant does not dispute that Plaintiff is disabled within the meaning of the NJLAD, and that because of his disability, it was difficult and painful for him to commute, engage in physically demanding activities, walk long distances, and regulate his body temperature. (Def. Br., ECF No. 25-1 at 28; Def. SOMF, ECF No. 25-2 ¶ 57; Kumarshetty Decl., Def. Motion for Summary Judgment, ECF No. 25-9 Exh. B).[4] Plaintiff argues TCS discriminated against him because it failed to reasonably accommodate his disability by not making a good faith effort to allocate him after the Bank of America project ended in March 2020 and that TCS ultimately terminated him because of his disability and perceived disability. (Pla. Br., ECF No. 27-1 at 8–9). Defendant argues that Plaintiff has presented no evidence of discriminatory intent as to his termination. (Def. Br., ECF No. 25-1 at 28). Defendant further contends that it is

---

[4] Defendant redacted deposition testimony related to the specific nature of the Plaintiff's alleged disability. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 23:10–13, 59:10–12, 85:5–7). Therefore, the Court has no information as to the specific nature of the disability. However, since Defendant does not dispute that Plaintiff had a disability, this does not impact the Court's analysis.

undisputed from the record that the RMG was taking Plaintiff's accommodation into account when looking for projects for Plaintiff. (Def. Br., ECF No. 25-1 at 30).

Viewing the facts in the light most favorable to Plaintiff, he has not established a prima facie case of disability discrimination as he has not provided any evidence that Defendant sought similarly qualified individuals for the job who were not members of Plaintiff's protected class. But even if Plaintiff could establish a prima facie case of disability discrimination, Defendant would still be entitled to summary judgment, as set forth above with respect to Plaintiff's race discrimination claim, because Defendant has provided a legitimate, nondiscriminatory basis for the adverse employment action which Plaintiff fails to sufficiently rebut.

Additionally, to the extent that Plaintiff asserts a claim for failure to accommodate, it is undisputed that Defendant granted Plaintiff's exact accommodation request in January 2020 to work remotely, and that Plaintiff was able to work on the Bank of America project remotely from home thereafter. (Def. SOMF, ECF No. 25-2 ¶ 60; Pla. SOMF, ECF No. 27-2 ¶ 60). The undisputed facts also show that the RMG attempted to locate new projects for Plaintiff, after the Bank of America project ended, during the months prior to his termination. (Mehndiratta Decl., Def. Motion for Summary Judgment, ECF No. 25-16 Exh. A–B). As previously mentioned, Plaintiff acknowledged in his own testimony that the RMG does not filter through the available projects to see if a project is suitable for each unallocated employee but instead submits all available work projects to all unallocated employees. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 155:18–159:9). Nevertheless, Defendant did in fact include Plaintiff's location restriction in the subject line of the emails inquiring for a work project for Plaintiff for three months. (Mehndiratta Decl., Def. Motion for Summary Judgment, ECF No. 25-16 Exh. A–B). Indeed, Plaintiff interviewed with clients for projects in June 2020. (Kumarshetty Decl., Def.

15

Motion for Summary Judgment, ECF No. 25-9 Exh. E; Mehndiratta Decl., Def. Motion for Summary Judgment, ECF No. 25-16 Exh. B).

To be sure, the interactive process requires employers to make a good faith effort to seek accommodations. *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 602 (D.N.J. 2015). "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome." *Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999)). Here, the record demonstrates Defendant accommodated Plaintiff's disability and work restrictions by granting his exact accommodation request—to work remotely—and sought to have Plaintiff placed on a suitable project that would accommodate his disability for three months. *See Rich*, 294 F. Supp. 3d at 279–80 (explaining, in granting summary judgment motion for the defendant, searching for lateral positions, accommodating work restrictions, and accommodating demotion request, was a good faith effort to assist the plaintiff with her disabilities); *Nwaohia v. Wal-Mart Stores, Inc.*, No. 18-10648, 2021 WL 2821261, at *7 (D.N.J. July 7, 2021) (explaining granting a plaintiff's exact accommodation request—limiting job duties and permitting leave—was a reasonable accommodation in a summary judgment motion). The fact that no client ultimately retained Plaintiff on a project for three months in and of itself does not suggest that Defendant failed to accommodate him or terminated him because of his disability or perceived disability. Indeed, the opposite is true: Defendant granted Plaintiff's exact accommodation request and sought to continue providing the accommodation until Plaintiff reached the three-month mark without any

16

assignment. At which point, TCS began the termination process in accordance with company policy.

The comment that Plaintiff "will not get even an interview call with this [location] constraint," in an email from a RMG representative in March 2020, does not change the analysis. (Kumarshetty Decl., Def. Motion for Summary Judgment, ECF No. 25-9 Exh. C). It was not made by a decisionmaker. Additionally, the comment was made in March 2020 while Plaintiff was still working on the Bank of America project. Again, Defendant did not terminate Plaintiff until July 2020 after it attempted to locate a new work project for Plaintiff with his location restriction in mind. Plaintiff acknowledges in his deposition testimony that in the months following the Bank of America project, RMG submitted available work projects to him. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 279:10–24). While Plaintiff testified that he declined those work projects because of their location or because of the role and responsibilities required for the projects, RMG still sought work projects for Plaintiff while specifically noting Plaintiff's location restriction in those requests. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 279:10–281:24). This comment, temporally remote from his termination and not made by a decisionmaker, does not suggest that Defendant did not reasonably accommodate Plaintiff as TCS continued to do so for three months.

For these reasons, summary judgment is granted as to Counts Two and Three.

**C. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

Finally, Plaintiff alleges that TCS violated the NJLAD by retaliating against him after he complained of discrimination. (ECF No. 1-1, ¶¶ 55–60). The NJLAD prohibits retaliation against an employee because the employee "has opposed any practices or acts forbidden under [the NJLAD] or because that person has filed a complaint, testified or assisted in any proceeding

under [the NJLAD.]" N.J.S.A. § 10:5-12(d). To state a claim for retaliation, Plaintiff must show that he (1) engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. *Sanchez v. SunGard Availability Servs., L.P.*, 362 F. App'x. 283, 287 (3d Cir. 2010).

Plaintiff alleges that he complained to his supervisor that TCS was ignoring his disability accommodation request after March 2020, leading up to his termination. (Pla. Br., ECF No. 27-1 at 8–9). Further, Plaintiff testified that he told his supervisor he felt he was being discriminated against because of the assignments RMG was offering him after his accommodation request was in place. (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 88:3–92:19). Defendant contends Plaintiff did not complain to anyone at TCS that Defendant discriminated against him on the basis of race or disability. (Def. Br., ECF No. 25-1 at 34). Defendant further contends that there is no causal link between Plaintiff's complaints and his termination. (Def. Br., ECF No. 25-1 at 35).

Plaintiff clearly establishes the second prong as he was terminated by TCS. Viewing the facts in the light most favorable to Plaintiff, his complaint to his supervisor that he felt TCS was discriminating against him establishes protected activity. However, Plaintiff fails to establish a causal connection between the protected activity and his termination. A causal connection can be demonstrated by showing: "(1) temporal proximity between the protected activity and the adverse employment action; (2) an intervening pattern of antagonism; or (3) other facts, that, when 'looked at as a whole,' are sufficient to raise an inference." *Newton–Haskoor v. Coface N. Am.,* No. 11-3931, 2012 WL 1813102, at *5 (D.N.J. May 17, 2012) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 280-81 (3d Cir. 2000)). "Temporal proximity between the protected

18

activity and the adverse employment action can be circumstantial evidence of causation, as it is often sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action." *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 376 (D.N.J. 2006) (internal quotation marks and citations omitted).

It is undisputed that Plaintiff was sent to the RMG after his Bank of America project ended. (Def. SOMF, ECF No. 25-2 ¶¶ 33, 35; Pla. SOMF, ECF No. 27-2 ¶¶ 33, 35). It is also undisputed that the RMG sought work assignments for Plaintiff. (Def. SOMF, ECF No. 25-2 ¶¶ 33, 35; Pla. SOMF, ECF No. 27-2 ¶¶ 33, 35). It is further undisputed that Plaintiff remained unallocated for three months before TCS terminated his employment. (Def. SOMF, ECF No. 25-2 ¶ 11; Pla. SOMF, ECF No. 27-2 ¶ 14). Here, no facts exist which link Plaintiff's alleged complaint in April or May of 2020, (Def. Motion for Summary Judgment, ECF No. 25-7 Exh. C 88:3–89:24), with TCS's decision to terminate Plaintiff several months later in July 2020, after he was unallocated for three months and there is not sufficient temporal proximity to create such a causal link. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Andreoli v. Gates,* 482 F.3d 641, 650 (3d Cir. 2007) (finding that five-month time period between employee's complaint and first adverse action was, without additional evidence, insufficient to raise an inference of causation); *Young v. Hobart West Grp.*, 897 A.2d 1063, 1073–74 (N.J. Super. Ct. App. Div. Dec. 15, 2005) (explaining four-month gap between complaint and termination is insufficient to establish a causal link).

Finally, even if Plaintiff could establish a prima facie case of retaliation, Defendant has

19

set forth non-retaliatory reasons for terminating Plaintiff which Plaintiff fails to sufficiently rebut.

For these reasons, summary judgment is granted as to Count Four.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. (ECF No. 25). An appropriate Order accompanies this Opinion.

*[Signature: Christine A. O'Hearn]*

**CHRISTINE P. O'HEARN**
**United States District Judge**